RENITA CONEAL                                                                    PLAINTIFF

v.

AMERICAN COMMERCE INSURANCE
COMPANY                                                                          DEFENDANT

## OPINION AND ORDER

Senior Judge Thomas B. Russell referred this matter to Magistrate Judge Lanny King for ruling on all discovery motions. (Docket # 7).

This matter is before the Court on Defendant, American Commerce Insurance Company's (hereinafter, "ACIC") Motion to Compel, or, in the Alternative, Motion for *In Camera* Review. (Docket # 16).  Plaintiff Renita Coneal has filed a Response (Docket #17), and Defendant has filed a Reply (Docket # 18).  Fully briefed, this matter is now ripe for adjudication.

For the reasons detailed below, Defendant's Motion (Docket # 16) is GRANTED in part and DENIED in part.  The Court finds that all of the information requested is broadly relevant, but the information is privileged except for those documents pertaining to the Plaintiff's choice of law firm.

### Factual Background

This matter arises from a civil action brought by Plaintiff Coneal against Defendant ACIC for violations of Kentucky's Unfair Claims Settlement Practices Act, The Kentucky Consumer Protection Act, and Kentucky common law regarding bad faith, as well as injuries suffered in an automobile accident. (Docket # 1).  Coneal's claims derive from ACIC's handling of Plaintiff's insurance claim against ACIC's insured, Mary Payne, for damages suffered in an

automobile accident.  (Id.).  Plaintiff brought claims against both Payne and ACIC.  (Docket # 17 at 1).  Coneal made a settlement demand to ACIC in May or June of 2016.[1]  Coneal alleges that ACIC acted in bad faith by neglecting to respond to this demand until January 17, 2018, well over 20 months afterward. (Id.).  Defendant argues that Plaintiff's former attorney, David Oakes, was the reason for much of the delay.  "[I]t is apparent from discovery that a great deal of delay in reaching a settlement was caused by David Oakes, the attorney whom Plaintiff engaged to represent her in presenting her pre-suit claim for compensation of alleged injuries to ACIC." (Docket # 16 at 3).  Defendant attributes further delay to questions regarding the possible pre-existence of Coneal's medical conditions. (Id. at 4).  Plaintiff believes that ACIC had the necessary information to attempt to settle the claim well before January 2018. (Docket # 17 at 2).

The case was originally filed in McCracken Circuit Court, and Defendant subsequently removed it following Ms. Payne's dismissal. (Docket # 1 at 2).  Plaintiff provided, along with her responses to Defendant's Second Set of Requests for Production of Documents and Interrogatories, two privilege logs. (Docket # 16 at 4).  The first pertained to documents provided by Oakes, the second related to documents provided by Saladino & Schaaf, Oakes' former law firm. (Id).[2]  Plaintiff claimed 34 documents were protected by the attorney-client privilege. (Docket # 16 at 4).  Defendant disagrees with 20 of those claims, but states that some of those documents may be duplicates. (Id.).

---

[1] The timing of Coneal's offer is disputed.  Plaintiff alleges she made the demand on May 6, 2016 (Docket # 1 at 1), while Defendant says it did not receive it until June 21, 2016. (Docket # 17 at 3, n.2).  This matter is not pertinent to the Motion to Compel before the Court for resolution.

[2] Oakes was Plaintiff's counsel on the underlying tort claim.  Oakes' representation of Coneal began in February 2015, while he was a part of the Saladino & Schaaf firm.  Mid-way through this case, Oakes left Saladino & Schaaf and started a new law firm. (Docket # 17 at 7).

Defendant argues that the information requested is relevant and discoverable and is not covered by the protections of attorney-client privilege, as it is underlying factual information to which the protections are not extended. (Id. at 7). Specifically, Defendant seeks information from six sources: (1) documents reflecting injuries suffered and medical treatment received by Plaintiff (lines 8, 9, and 10 of the Oakes privilege log and lines 11, 12 15, 16, and 17 of the Saladino & Schaaf privilege log); (2) the Attorney Screening Form used by David Oakes (line 20 of the Oakes privilege log); (3) the engagement letter signed by Coneal with regards to her representation by Saladino & Schaaf for her claim for compensation from ACIC (line 9 of the Saladino & Schaaf privilege log); (4) Coneal's contingency fee agreement regarding her compensation claims (lines 18 and 21 of the Oakes Privilege Log); and (5) Coneal's contingency fee agreement regarding her bad faith claims (line 14 of the Oakes privilege log); and (6) documents pertaining to Coneal's choice between law firms (line 17 of the Oakes privilege log and lines 5, 6, 7, and 18 of the Saladino & Schaaf privilege log). (Id. at 10-14). Plaintiff responds that the documents are covered by the attorney-client privilege and are not discoverable, regardless of any showing of need, or nature of underlying facts. (Docket # 17 at 4-7). Additionally, Plaintiff alleges that Defendant already has the information it seeks in these documents from other, non-privileged sources. (Id. at 7-8).

## Legal Standard

"Rule 26(b)(1) is the touchstone for the scope of civil discovery." <u>Pogue v. NorthWestern Mut. Life Ins. Co.</u>, No. 3:14-CV-598-CRS, 2017 WL 3044763, at *4 (W.D. Ky. July 18, 2017). Rule 26(b)(1) provides that "[p]arties may obtain discovery regarding any nonprivileged matter that is relevant to any party's claim or defense and proportional to the needs of the case." FED. R. CIV. P. 26(b)(1). Relevance is to be "construed broadly to encompass any matter that bears on,

or that reasonably could lead to other matter[s] that could bear on any party's claim or defense. The Court has wide discretion when dealing with discovery matters, including whether information might be relevant." Alvey v. State Farm Fire & Casualty Co., No. 5:17-CV-00023-TBR-LLK, 2018 WL 826379, at *2 (W.D. Ky. Feb. 9, 2018) (*citing* Pogue, 2017 WL 3044763, at *5) (citations omitted).

Rule 26(b)(2) addresses limitations on the frequency and extent of discovery. *See* Schall v. Suzuki Motor of Am., Inc., No. 4:14CV-00074-JHM, 2017 WL 4050319, at *4 (W.D. Ky. Sept. 13, 2017); Pogue, 2017 WL 3044763, at *5. Subpart (b)(2)(C) provides:

> (C) When Required.  On motion or on its own, the court must limit the frequency or extent of discovery otherwise allowed by these rules or by local rule if it determines that:
>
>> (i) the discovery sought is unreasonably cumulative or duplicative, or can be obtained from some other source that is more convenient, less burdensome, or less expensive;
>>
>> (ii) the party seeking discovery has had ample opportunity to obtain the information by discovery in the action; or
>>
>> (iii) the proposed discovery is outside the scope permitted by Rule 26(b)(1).

FED. R. CIV. P. 26(b)(2)(C).

Privileged documents fall outside of the scope of discovery. FED. R. CIV. P.26(b)(1).  The burden of establishing that a privilege exists to shield a document from discovery rests on the party asserting the privilege. Cardinal Aluminum Co. v. Continental Casualty Co., Case No. 3:14-CV-857-TBR-LLK, 2015 WL 4483991, at *2 (W.D. Ky. July 22, 2015).  Here, Plaintiff must bear that burden.  In re Grand Jury Investigation No. 83-2-35, 723 F.2d 447, 450 (6th Cir. 1983).

Plaintiff pled claims under the Kentucky Unfair Claims Settlement Practices Act, the Kentucky Consumer Protection Act, and Kentucky common law regarding bad faith. (Docket #

1).  The source of federal jurisdiction in this removal action rests in diversity.  Thus, for questions of attorney-client privilege, this Court must apply state law if "state law supplies the rule of decision for the claim." FED. R. EVID. 501; *see* <u>In re Powerhouse Licensing, LLC</u>, 441 F.3d 467, 472 (6th Cir. 2006); *see also* <u>Pinnacle Surety Services, Inc. v. Manion Stigger, LLP</u>, 370 F.Supp. 3d 745, 750 (W.D. Ky. 2019).  State law supplies the rules of decision for all the claims in this case, therefore, this Court must apply the Kentucky law regarding attorney client privilege. <u>Jewell v. Holezer Hosp. Found., Inc.</u>, 899 F.2d 1507, 1513 (6th Cir. 1990) ("In a civil case involving claims based on state law, the existence of a privilege is to be determined in accordance with state, not federal, law.") *see also* <u>Brown v. Tax Ease Lien Servicing, LLC</u>, Case No. 3:15-CV-208-CRS, 2017 WL 6939338, at *11 (W.D. Ky. Feb. 16, 2017).

## Analysis

### I.      Relevance

Relevance serves as the threshold requirement for all discovery.  Evidence need not be admissible to be discoverable, it needs only to meet the threshold of relevance.  Information is within the scope of discovery if it is "relevant to any party's claim or defense and proportional to the needs of the case." FED. R. CIV. P. 26(b)(1).  Coneal claims that the information sought by ACIC lacks relevance.  ACIC argues that these documents shed light on the reasons for the delay in attempting to resolve Coneal's claims.  As an initial matter, the Court finds all of the information requested by ACIC meets the requirements of relevance under Rule 26.

The relevance of these documents derives from the common-sense linkage between Plaintiff's claims and the information contained within the documents.  Plaintiff has brought claims for physical injuries incurred in an accident with ACIC's insured. (Docket # 1-1).  In so doing, she has placed her medical condition into issue.  This means that information pertaining to

her medical condition is relevant to this case. Therefore, documentation reflecting injuries suffered and medical treatment received by the Plaintiff[3] (lines 8, 9, and 10 of the Oakes privilege log and lines 11, 12, 15, 16, and 17 of the Saladino & Schaaf privilege log) and the Attorney Screening Form (line 20 of the Oakes privilege log) are relevant. Both contain information regarding the underlying motor vehicle accident, as well as injuries suffered by the Plaintiff. The information contained in these documents is relevant to this case.

Additionally, all of the broad categories of information requested likely contain information relevant to Plaintiff's claims under the Kentucky Unfair Claims Settlement Practices Act, as well as Kentucky law regarding bad faith insurance claims. (Docket #1-1). Plaintiff asserts that ACIC delayed in attempting to settle her claim, much to her detriment. (Id.). ACIC counters that Plaintiff's own actions were the cause of the delay.

The accident at the center of this case occurred on February 12, 2015. (Id.). Plaintiff's state court suit was filed on November 27, 2017. (Id.). The Attorney Screening Form[4], Engagement Letter[5], Contingency Agreements[6] for both her underlying tort claims and bad faith claims, and documents concerning Plaintiff's choice of law firms[7] all are relevant to the delay in filing suit. Each may contain information that sheds light on Plaintiff's reasons for waiting to

---

[3] These communications include: two copies of a letter dated 7/16/15 between Coneal and Julie Hunt, Oakes' paralegal, updating them on injuries and medical treatment (Oakes privilege log lines 8 and 9), a letter dated 4/28/15 between Coneal and Oakes updating him on injuries and medical treatment (Oakes privilege log line 10), an email from Coneal to Hunt dated 7/16/15 with a medical update and the forwarded email from Hunt to Oakes (Saladino & Schaaf privilege log lines 11 and 12), and three notes to file from Hunt, dated 9/21/15, 6/3/15, and 5/7/15 regarding medical updates (Saladino & Schaaf privilege log lines 15, 16, and 17). (Docket # 16-2 at 2-3).

[4] Line 20 of the Oakes privilege log.

[5] Line 9 of the Saladino & Schaaf privilege log.

[6] Lines 18 and 21 of the Oakes privilege log for the tort compensation claims. Line 14 of the Oakes privilege log for the bad faith claims.

[7] Line 17 of the Oakes privilege log and lines 5, 7, 8, and 18 of the Saladino & Schaaf privilege log.

file suit, the reasons for relevant gaps in time, and the like. All of these would be important to determining the presence of bad faith on the part of ACIC in its handling of Plaintiff's claims.

Additionally, the reasons for the delay could be relevant to development of evidence for trial. "The Sixth Circuit has held that one may admit 'facts tending to show interest, bias or motive' at trial, and therefore one may discover such evidence or information reasonably calculated to lead to the discovery of such evidence." In re Complaint of Foss Maritime Co., No. 5:12-CV-21-TBR-LLK, 2015 WL 1249571, at *1 (W.D. Ky. Mar. 18, 2015) (*citing* Majestic v. Louiville & Nashville R.R. Co., 147 F.2d 621, 627 (6th Cir. 1945)). To establish a bad faith claim under Kentucky law, information surrounding Plaintiff's delay would be relevant to a showing of "interest, bias, or motive" at trial.

Finally, Plaintiff has failed to carry the burden of refuting relevance. In filing a claim for bad faith that seeks damages and attorney's fees, Plaintiff has placed the fees incurred in the underlying claim at issue. Further, Plaintiff does no more to dispute the relevance of this information than to state that it is not relevant. Again, the bar of relevancy is a low one. The party resisting discovery has the burden to "show that the material sought either falls beyond the scope of relevance, or is so marginally relevant that he potential harms of production outweigh the presumption in favor of broad disclosure." Bentley v. Highlands Hosp. Corp., No. 7:15-CV-97-ART-EBA, 2016 WL 762686, at *1 (E.D. Ky. Feb. 23, 2016). Defendant has established that the information requested is relevant, and Plaintiff does not present evidence to successfully refute it.

The Court finds that all subsets of information sought by Defendant ACIC is relevant and within the bounds of discovery. The Court will now address Plaintiff Coneal's objections based upon the attorney-client privilege.

## II.    Attorney-Client Privilege[8]

The Defendant has produced Plaintiff's privilege logs from both Oakes Law Firm and Oakes' previous employer, Saladino & Schaaf. (Docket # 16-2).  In its Motion to Compel, Defendant argues that Plaintiff's privilege logs withhold information that is not privileged. (Docket # 16 at 5).  The logs invoke the attorney-client privilege as the basis for exclusion.

Plaintiff asserts that the information sought by Defendant is protected from disclosure by the attorney-client privilege.  The attorney-client privilege is bedrock principle of American jurisprudence. 8 J. Wigmore, Evidence § 2290 (McNaughton rev. 1961); *see also* Hunt v. Blackburn, 128 U.S. 464, 470, 9 S.Ct. 125, 127 (1888)[9].  It exists for the purposes of excluding communications, made in confidence between client and counsel, for the purposes of procuring legal services, from use in legal proceedings. Hickman v. Taylor, 329 U.S. 495, 508 (1947).

Kentucky's "lawyer-client privilege" functions as the state's equivalent of the federal attorney-client privilege.  As discussed above, a federal court, sitting in diversity, analyzing claims brought under state law, applies the state law of privilege.  Jewell v. Holezer Hosp. Found., Inc., 899 F.2d 1507, 1513 (6th Cir. 1990).

The attorney-client privilege is a narrow one, that protects only those communications between lawyer and client made "for the purpose of facilitating the rendition of professional legal services." KRE 503(b).  Courts applying Kentucky law have found that the privilege is not

---

[8] It is important to note what is at issue.  The parties have not mentioned, nor has the Court been briefed upon, the applicability of the work product doctrine, which protects "documents and tangible things that are prepared in anticipation of litigation or for trial." Fed. R. Civ. P. 26(b)(3)(A).  The Court makes no judgments regarding the applicability of the doctrine.  A completely different set of standards would apply were the Court to interpret the applicability of the work product doctrine. *See* In re Powerhouse Licensing, LLC, 441 F.3d 467, 472 (6th Cir. 2006) (finding that federal law governs the applicability of the work product doctrine).

[9] Privilege "is founded upon the necessity, in the interest and administration of justice, of the aid of persons having knowledge of the law and skilled in its practice, which assistance can only be safely and readily availed of when free from the consequences or the apprehension of disclosure."

boundless, and that it does not protect business advice,[10] or discussion of employment contract negotiations,[11] or an agreement to indemnify or pay costs and fees.[12]  A bare assertion of the applicability of the privilege is not sufficient to validate its application. Stidham v. Clark, 74 S.W.3d 719, 725 (Ky. 2002).  The party asserting the privilege has the burden of showing that it applies. Collins v. Braden, 384 S.W.3d 154, 164-65 (Ky. 2012).  "A claim of privilege can be defeated by proof by a preponderance of the evidence, including the communication or material claimed to be privileged, that the privilege has been waived or that the communication or material is either outside the scope of or not germane to the privilege or falls within a specified exception to the privilege." Stidham, 74 S.W.3d at 727.

Kentucky Rule of Evidence 503[13] supplies us with the attorney-client privilege for claims under Kentucky law. Haney v. Yates, 40 S.W.3d 352, 354 (Ky. 2000).  "The basic rule of the privilege allows a client to refuse to disclose and to prevent any other person from disclosing a confidential communication made for the purpose of facilitating the rendition of professional legal services to the client." Collins v. Braden, 384 S.W. 3d 154, 161 (Ky. 2012)(internal quotation omitted).[14]  The Supreme Court of Kentucky has recognized "three salient principles"

---

[10] Lexington Pub. Library v. Clark, 90 S.W. 3d 53, 59-60 (Ky. 2002) (holding that "business advice" is not protected by the attorney-client privilege, absent an request for legal advice).

[11] Invesco Institutional (N.A.), Inc. v. Paas, 244 F.R.D. 374, 389 (W.D. Ky. 2007) (Federal district court applying Kentucky law found that the privilege did not extend to communications and negotiations between parties regarding creation of an employment contract).

[12] In re Complaint of Foss Maritime Co., No. 5:12-CV-21-TBR-LLK, 2015 WL 1249571, at *3 (W.D. Ky. Mar. 18, 2015) (holding that an agreement to pay costs and fees or indemnify cannot constitute a privileged, confidential communication between a party and its counsel.)

[13] KRE 503 broadly covers five categories of communications covered by the privilege: (1) communications between the client and the lawyer; (2) between a lawyer and representative of the lawyer; (3) by the client or the client's lawyer to a lawyer representing another party in a pending action and concerning a matter of common interest therein; (4) between a client and a representative of the client; and (5) among lawyers representing the same client.  These protections also extend to communications involving the representatives of clients and lawyers.

[14] The Kentucky Supreme Court has also adopted the federal standard under which a communication made by an employee acting within the scope of employment is potentially protected by the attorney client privilege. See Lexington Pub. Library v. Clark, 90 S.W.3d 53-59 (Ky. 2002).

regarding attorney-client privilege: (1) broad discovery exists for non-privileged matters[15], (2) "the party asserting a privilege must prove its applicability," and (3) the courts should strictly construe privileges because they constrain the public's right to evidence. <u>Id</u>.  A communication is considered "confidential" for purposes of KRE 503(a)(5) if it is "not intended to be disclosed to third persons other than those to whom disclosure is made in furtherance of the rendition of professional legal services to the client or those reasonably necessary for the transmission of a communication." <u>Lexington Pub. Library v. Clark</u>, 90 S.W.3d 53, 58 (Ky. 2002); <u>St. Luke Hosps, Inc. v. Kopowski</u>, 160 S.W.3d 771, 776 (Ky. 2005).

A client who voluntarily discloses or consents to the disclosure of any significant part of an otherwise protected confidential communication made to facilitate the rendition of legal services will be held to have waived the privilege. <u>Brown v. Tax Ease Lien Servicing, LLC</u>, Civil Action No. 3:15-CV-208-CRS, 2017 WL 6939338, at *11 (W.D. Ky. Feb. 16, 2017); *see also* <u>3M Co. v. Engle</u>, 328 S.W.3d 184, 189 (Ky. 2010) (*citing* <u>St. Clair v. Commonwealth</u>, 140 S.W.3d 510, 548-49 (Ky. 2004); *see also* KRE 509 ("A person upon whom these rules confer a privilege against disclosure waives the privilege if he or his predecessor while owner of the privilege voluntarily discloses or consents to disclosure of any significant part of the privileged matter.")).  In simple terms, a party is capable of implicitly waiving the privilege through disclosure to others, even if that disclosure is done through a lawyer's communication to another.

Defendant contends that by communicating the information to her attorney, who documented the information, the Plaintiff has waived the attorney client privilege, simply because the information is contained in those documents.  This argument is incorrect.  Just as the

---

[15] Rule 26 provides the same result in a federal forum. FED. R. CIV. P. 26(b)(1).

placement of information in an attorney's case file does not automatically entitle the information to privilege protections, the placement of non-privileged information in an otherwise privileged document does not render it non-privileged. Nor does it function as a waiver of the privilege as to the entirety of the document.

### a. Documents Reflecting Injuries Suffered and Medical Treatment Received by Plaintiff (lines 8, 9, and 10 of the Oakes privilege log and lines 11, 12, 15, 16, and 17 of the Saladino & Schaaf privilege log).

Defendant seeks to compel production of "updates on Plaintiff's injuries and medical condition, including written statements from Plaintiff to her attorney" that it believes "constitute non-privileged facts." (Docket # 16 at 10). Plaintiff responds that these communications are protected by the privilege and that Defendant has access to the information regarding Plaintiff's injuries and medical treatment through other methods. (Docket # 17 at 6). For the reasons discussed below, Plaintiff's position is persuasive.

To support its position, Defendant cites Brown v. Tax Ease Lien Servicing, LLC, for the proposition that the factual information in the file is not subject to the privilege. (Docket # 16 at 11). Defendant's invocation of Brown is inapposite. Brown addressed the argument that a third party's communications with a party were not protected simply because of their location in an attorney's case file. Brown did not, however, indicate that they were not protected from disclosure.

Plaintiff's reliance on Brown is inconsistent with Collins. In Collins v. Braden, the Kentucky Supreme Court held that communications between a client, as well as its employees, and its attorney were protected from disclosure, including any recordings of the statements made during the communications. Collins v. Braden, 384 S.W.3d 154, 159 (Ky. 2012). This holding, however, came with a caveat. The privilege "protects *only* the communication to the attorney. It

does not protect any facts or claims to the attorney in those communications from all discovery. Such facts are still discoverable through other discovery tools like the deposition of the hospital's employees." Id. (emphasis in original).

Collins dealt with a plaintiff who sued a hospital for the wrongful death of a spouse. Id. at 155. The hospital used attorneys to investigate the claims in the case, then claimed that the facts they found were privileged. Id. at 159. The Kentucky Supreme Court found that, at most, the privilege "protects only the communication to the attorney. It does not protect any facts or claims reported to the attorney in those communications from all discovery." Id. However, the privilege does protect communications to the attorney by a client. Id. The party seeking the non-privileged information contained in the communications could still attempt to procure it through other means, such as depositions. Id.

Defendant appears to argue that by disclosing facts to her attorney, Ms. Coneal waived any protections of the attorney-client privilege, simply because the facts concerned the subject matter of her claims. This directly contradicts the entire point of the attorney-client privilege, which is to encourage disclosure of facts by clients to their attorneys during rendition of legal services. Id. at 160.

Additionally, Defendant seems to confuse the work-product doctrine with the attorney-client privilege. The work product doctrine, which protects the materials prepared by attorneys in anticipation of litigation, is distinct from and broader than the attorney-client privilege. *See* United States v. Nobles, 422 U.S. 225, 236 (1975); *see also* Hickman v. Taylor, 329 U.S. 495 (1947). The work product doctrine is broader than the attorney-client privilege and is governed by federal law. In re Powerhouse Licensing, LLC 441 F.3d 467, 472 (6th Cir. 2006).

Plaintiff communicated facts about her injuries and medical condition to her attorney in the process of securing representation. These communications regarding Plaintiff's injuries and medical treatments are privileged and need not be disclosed. However, Plaintiff's act of withholding these communications does not prevent Defendant from learning of Plaintiff's injuries or treatment, which are clearly at issue. Plaintiff may obtain this information from documents produced during discovery, as well as through other discovery tools, like depositions.

This situation is much like the one evaluated by the Kentucky Supreme Court in <u>Collins</u>. Therein, the Kentucky Supreme Court found that communications found in attorney records were protected from disclosure by Kentucky's lawyer-client privilege, but the party seeking information could obtain information through other tools. Using the example of a hypothetical physician admitting fault to a hospital's attorney in a medical malpractice action, the Kentucky Supreme Court noted that "the communication of the fault (and any recording of it, written or oral) would be protected. The privilege, however, would not prevent plaintiff's counsel from deposing the physician employee and asking whether he was at fault." <u>Collins</u>, 384 S.W.3d at 159. The situation is the same here. Plaintiff's communications to Oakes, her attorney, are protected from disclosure by the privilege. Defendant is correct insofar as stating that the facts themselves are not privileged, but the communications containing those facts are. Defendant needs to use an alternative method of obtaining those facts. For example, Defendant can depose Plaintiff and ask about her injuries and medical treatment, but it may not obtain these specific notes and communications.

Defendant also asserts, "Furthermore, Plaintiff has provided such updates not as a confidential request for legal advice but rather with the expectation that her attorney would forward that information about her injuries and medical condition to ACIC as part of her claim

for compensation of injuries." (Docket # 16 at 11).  Mere possibility of communication does not obviate the privilege, nor does the relation of the communication to the subject matter of the suit.

For these reasons, Defendant's Motion to Compel production of documents that reflect Plaintiff's alleged injuries and medical treatment to the extent Plaintiff communicated the underlying information to her attorney, is **DENIED** on the basis of privilege. (Docket # 16 at 10).

b. **The Attorney Screening Form (line 20 of the Oakes privilege log).**

Defendant argues that the "Attorney Screening Form" completed by Coneal and submitted to Oakes, which contains "information about accident" (Docket #16-2), is not protected from disclosure by the attorney-client privilege, to the extent that it contains underlying facts, again relying on Brown. (Docket # 16 at 11).  Defendant argues that Plaintiff expected these facts to be disclosed to ACIC by her attorney during litigation over her claims for compensation. (Id.).  Plaintiff responds that Kentucky's law on attorney-client privilege clearly contemplates that disclosures, including facts, made by a client to her attorney for purposes of making a claim are protected by the privilege. (Docket # 17 at 5).  Defendant may still obtain these facts, but it may not compel Plaintiff to produce the contents of her conversations with counsel to do so. (Id.).

As above, Collins leads us to a similar conclusion, the Attorney Screening Form is protected from disclosure by Kentucky's lawyer-client privilege.  Plaintiff, in the course of securing legal representation, communicated facts regarding the underlying accident to Oakes. Oakes took the facts in the form in reviewing Coneal's case and took her on as a client.  This was a communication, between a lawyer and a client, for purposes of securing legal representation. The simple fact that facts in the communication are relevant to the case does not obviate the

-14-

privilege. *See* <u>St. Luke Hosps.</u>, 160 S.W. 3d at 777. Defendant is correct that the information contained in the Form is relevant, but it is incorrect in asserting that it is entitled to the Form to obtain the information. If it seeks the underlying facts contained in the Form, it can secure them with the other tools in the discovery toolbox, such as depositions. While this may not be the most cost-effective or efficient way to obtain the information, it provides a balance of protecting the communications of lawyer and client with the need for relevant information in the defense of claims.

Defendant also claims that the Form was not privileged because it "merely concern[ed] the business terms of agreements under which the lawyer undertakes to represent the client, or agreements concerning the terms on which the lawyer is to be paid." (Docket # 18 at 4). Kentucky's version of the privilege does not apply to disclosures made to an attorney absent a request for legal advice. <u>Lexington Pub. Library v. Clark</u>, 90 S.W.3d 53, 60 (Ky. 2002). However, that is not the case here. Plaintiff clearly communicated the facts to her attorney in the Attorney Screening Form in the process of seeking legal advice. Mr. Oakes had Plaintiff provide the information in the form as a prerequisite to legal representation. She sought legal advice from him in the process of filling out the form. She was participating in the very situation contemplated by the privilege.

Kentucky's lawyer-client privilege shields the Attorney Screening Form in this case from disclosure. The underlying facts themselves are not privileged, but the Form itself is. Defendant is free to discover the facts from other methods, as contemplated by the Kentucky Supreme Court in <u>Collins</u>, but it may not compel Plaintiff to produce the form, despite its relevance. Defendant's Motion to Compel production of Plaintiff's Attorney Screening Form (Oakes privilege log line 20) is **DENIED**.

### c. The Engagement Letter between Plaintiff and Saladino & Schaaf (line 9 of the Saladino & Schaaf privilege log).

Defendant seeks production of Plaintiff's engagement letter between herself and Oakes' regarding representation in the underlying tort claim. (Docket # 16 at 11). ACIC argues that this letter is not privileged "to the extent [it] contains the purpose of the engagement, any fee arrangement, payment of costs, or arrangement regarding the advancements of costs." (Id. at 12). Plaintiff argues that Defendant is not entitled to an actual copy of the Engagement Letter, as it is privileged. (Docket # 17 at 7).

Defendant, in support of its arguments, cites a case from the Fourth Circuit for the general proposition that disclosure of the client's identity, amount of fees, identification of payment, and general purpose of work performed are not privileged and are subject to disclosure. In re Grand Jury Subpoena, 204 F.3d 516, 520 (4th Cir. 2000).[16] While this information itself cannot be denied to an inquiring party on the basis of privilege, the documents containing the information may themselves be subject to the privilege. This is similar to the argument regarding the Attorney Screening Form. While Defendant may be entitled to the information, it may not dictate the exact means of production.

---

[16] Defendant also cites a myriad of cases for this proposition elsewhere throughout its Motion to Compel. However, Humphreys, Hutcheson and Moseley v. Donovan, 755 F.2d 1211, 1219 (6th Cir. 1985) referred to the applicability of the attorney-client privilege as to a matter of federal law, the Labor Management Disclosure Act of 1959, not Kentucky's version of the lawyer-client privilege, which the Court applies here. In U.S. v. Legal Services for New York City, 249 F.3d 1077, 1082 (D.C. Cir. 2001), the D.C. Circuit dealt with funding provided by a federal grant to a legal aid service and the requirements of public reporting attached thereto, not Kentucky's lawyer-client privilege. Avogoustis v. Shinseki, 639 F.3d 1340, 1343 (Fed. Cir. 2011) dealt with the application federal attorney-client privilege to a billing statement between a counsel and a prevailing party under the Equal Access to Justice Act (EAJA), not Kentucky's lawyer-client privilege (additionally, Plaintiff has already provided her billing statement to Defendant here). In In re Grand Jury Subpoena, 204 F.3d 516, 519-20 (4th Cir. 2000) the Court applied the federal version of the privilege to force a the reveal of a client's identity, again, not the Kentucky lawyer-client privilege. In United States v. (Under Seal), 774 F.2d 624, 628 (4th Cir. 1985) the Fourth Circuit found that the amount of fees paid was not protected by the privilege in a criminal matter, again, the federal privilege, not Kentucky's lawyer-client privilege, was applied. None of these cases provide a compelling reason to depart from Kentucky's interpretation of the privilege this Court applies.

Defendant is indeed entitled to this information, and Plaintiff has provided it, by Defendant's own admission. (Docket # 18 at 8). Defendant argues that Plaintiff, by disclosing this information, has waived the protections of the privilege for all documents containing this information. (Id.). As the Court stated above, the placement of information in an attorney's case file does not function as a waiver of privilege for the entirety of the document.

Defendant may seek the information contained within the Engagement Letter through other avenues of discovery, as described in Collins and in the sections above. It may not, however, compel Plaintiff to produce an otherwise privileged document solely for the reason that it contains non-privileged information that may be found elsewhere. Defendant knows that Oakes represented Coneal in the underlying tort action against its insured for a one-third contingency fee. (Docket # 18 at 8). It may ask questions about this agreement in depositions or may seek the surrounding information through other discovery tools, but it may not compel production of this privileged document.

Defendant's request to compel production of the Engagement Letter between Plaintiff and Oakes is **DENIED** on the basis of the lawyer-client privilege.

### d. The Contingency Fee Agreement Regarding Coneal's Compensation Claims (lines 18 and 21 of the Oakes privilege log).

Defendant disputes that Plaintiff may refuse to produce a copy of the Contingency Fee Agreement regarding her pre-suit compensation claims with Oakes during his time at Saladino & Schaaf on the basis of privilege. (Docket # 16 at 12). Plaintiff responds that while the amount of the fee and the nature of the representation are typically not privileged, the fee agreement itself is. (Docket # 17 at 7).

For support, Defendant relies upon In re Complaint of Foss Maritime Co., for the proposition that such information is non-privileged. In re Complaint of Foss Maritime Co., No. 5:12-cv-21-TBR-LLK, 2015 WL 1249571, at *3 (W.D. Ky. Mar. 18, 2015). However, this case does not support this conclusion. Foss concerned the attempts of defendants to avoid disclosure related to the indemnification of third-party defendants. Therein, the court found that "the existence of an agreement to indemnify or pay costs and fees cannot constitute a confidential communication between [defendant] and its counsel." Id. This is not the case here. Defendant knows of the existence of the contingency fee agreement, as Plaintiff has confirmed it. (Docket # 18 at 8-9). Further, Foss dealt with an application of federal law, not state law, as is the case here. Finally, Foss dealt with an indemnity arrangement between parties, not a contingency fee agreement, as is the case here. In short, Foss is not on point and does not control the outcome.

This case is more similar to Collins. As the Kentucky Supreme Court discussed there, the privilege protects communications between the attorney and client, even if the facts or claims in those communications would be non-privileged matter on their own. Collins, S.W. 3d at 159. ACIC may seek the non-privileged information contained in the communications through other means, such as depositions. Id.

Here, Defendant seeks a copy of Plaintiff's communications regarding her agreement on fees with her attorney. Defendant is entitled to the amount of the fee and the general nature of the representation, but not the communications contained in the contingency fee agreement. Plaintiff claims that Defendant's actions in refusing to address her case resulted in injury, leading her to seek legal representation to obtain recompense. She has provided the costs she has incurred in hiring an attorney, as well as the general purpose of the representation. (Docket # 18 at 9). Defendant is entitled to seek discovery on the facts surrounding this representation and

-18-

amount of fees, but it may not compel Plaintiff to give up its privileged communications in its search. Again, "great need and hardship cannot even begin to obviate the absolute attorney-client privilege." Collins, 384 S.W.3d at 159 (*citing* St. Luke Hosps., 160 S.W.3d at 777).

For these reasons, Defendant's Motion to Compel production of the Contingency Fee Agreement between Plaintiff and Oakes regarding the pre-suit compensation claims is **DENIED**.

### e. The Contingency Fee Agreement Regarding Coneal's Bad Faith Claims (line 14 of the Oakes privilege log).

Defendant argues that Plaintiff's Contingency Fee Agreement with Mehr, Fairbanks and Peterson in the current case is not protected by privilege. (Docket # 16 at 13). Plaintiff responds that the information is privileged, as it is a communication between counsel and client for purposes of obtaining legal services. (Docket # 17 at 8).

This Contingency Fee Agreement is protected by the lawyer-client privilege described by Kentucky law. The reasoning for the applicability of the privilege to the Agreement between Oakes and Plaintiff also applies here. Defendant's citation of Foss for support is not on point, nor does Defendant provide any authority to refute Plaintiff's reliance on the principles of Kentucky's application of the privilege, as described in Collins.

Defendant also alleges that the fee agreement is not privileged because it is between Oakes and his firm, Mehr, Fairbanks & Peterson, and Plaintiff. (Docket # 18 at 9). Defendant then goes on to refer to Plaintiff's agreements with these lawyers as "business arrangements." (Id.). Defendant goes on to contend that "by seeking attorney's fees paid to Mr. Oakes as damages due to an alleged violation of the Unfair Claims Settlement Practices Act, she has put *__all__* of her fee arrangements with Mr. Oakes at issue." (Id. emphasis original). This

characterization is not accurate. Though she may have placed the fees into issue, it does not destroy the protections of the privilege.

The Contingency Fee Agreement between Plaintiff and her attorneys in the current case is protected by the lawyer-client privilege. Defendant's Motion to Compel production of the Agreement is **DENIED**.

### f. Documents Pertaining to Coneal's Choice of Law Firms (line 17 of the Oakes privilege log and lines 5, 7, 8, and 18 of the Saladino & Schaaf privilege log).

Defendant argues that documents pertaining to Plaintiff's choice of law firms between Oakes and Saladino & Schaaf are not privileged and must be disclosed. (Docket # 16 at 13). Plaintiff disputes this, arguing that the communications are privileged and not subject to disclosure. (Docket # 17 at 6-7).

Kentucky law holds that the lawyer-client privilege is to be construed narrowly. Stidham, 74 S.W.3d at 722-23. To be protected by the privilege, "[t]he Statements must be made for the purpose of obtaining or furthering the rendition of legal services to the client." Collins, 384 S.W.3d at 161 (*citing* KRE 503(b)). In examining the statements to determine if the privilege protects them, the Court must examine the context. Kentucky courts have used a "dominant purpose" analysis in this regard. Asbury v. Beerbower, 589 S.W.2d 216, 217 (Ky. 1979).[17] If the "dominant purpose" was transmission to an attorney for rendition of legal services, then the communication is protected by the lawyer-client privilege. Haney v. Yates, 40

---

[17] Since Asbury, the Kentucky legislature has repealed the statute interpreted in the case, KRS 421.210(4), Repealed, 1992 Ky.Acts ch. 324 § 30. However, the drafters of KRE 503(a)(3) noted that the Rule is not inconsistent with Asbury. *See* Commentary to KRE 503, Evidence Rules Study Committee, Final Draft (1989); *see also* Haney v. Yates, 40 S.W.3d 352, 354-55 (Ky. 2000) (discussing interaction between Asbury and KRE 503).

S.W.3d 352, 354-55 (Ky. 2000). To determine if the privilege applies, the Court must examine the context to determine the "dominant purpose" of the communication.

Here, we have precious little to go on. Plaintiff only notes that the communications were "confidential letters contain[ing] communications about Oakes starting a new law firm and the client's choices with respect to representation." (Docket # 17 at 7, FN 5). The privilege logs also give us little to go on, noting that the documents are letters between Oakes, Gary Schaaf (Oakes' former law partner), and Coneal confirming her choice of Oakes as her attorney, as well as Saladino & Schaaf's non-representation of her following her selection. (Docket # 16-2). It is difficult to say what Plaintiff's mindset was in making the choice between lawyers or what purpose underlay each of the communications.

Case law holds that the party asserting the privilege has the burden of proving its applicability. <u>Collins</u>, 384 S.W.3d at 161, *citing* <u>St. Luke Hosps.</u>, 160 S.W.3d at 775. Here, Plaintiff has not met that burden. While the descriptions of the other documents withheld as privileged and described above clearly fit within the scheme developed by the Kentucky Supreme Court in <u>Collins</u>, these documents do not. The dominant purpose of these underlying communications was the selection of a law firm to represent Ms. Coneal in her claims for relief, not to secure specific legal advice or a discussion of a specific legal issue. She made a choice of lawyers, not a choice of strategy that is protected from disclosure by the privilege.

Defendant's Motion to Compel production of documents concerning Plaintiff's choice between law firms is **GRANTED**. Plaintiff shall produce these documents with any specific legal advice therein redacted and any further claims of privilege noted.

### III. Submissions for *In Camera* Review

Defendant has requested that the Court review the documents detailed in the privilege log *in camera* to determine the propriety of Plaintiff's claims of attorney-client privilege. (Docket # 16 at 14). The Court is able to rule on Defendant's Motion to Compel without reviewing the contents of the documents at issue. Accordingly, Defendant's request for an *in camera* review is **DENIED**.

### IV. The Scheduling Order

Defendant has moved the Court for a new litigation schedule pending the resolution of its Motion to Compel. (Id. at 15). In support of its request, Defendant submits that it has attempted, in good faith to resolve the disputes detailed in its Motion to Compel absent the participation of the Court. The disagreement between the parties has required Court participation. The Court will address the outstanding issues with the scheduling orders at a later date.

### Conclusion

For the reasons detailed above, the Court does **HEREBY ORDER AND ADJUDGE AS FOLLOWS**:

1) ACIC's Motion to Compel (Docket # 16) is **GRANTED IN PART** and **DENIED IN PART**. Plaintiff shall amend her discovery responses in compliance with this Order.

2) The Defendant's Motion for *In Camera* Review is **DENIED**. (Docket # 16).

3) The Court shall address the Scheduling Order (Docket # 7) at a later date.

**IT IS SO ORDERED**.

September 20, 2019

**Lanny King, Magistrate Judge**
**United States District Court**